FILED
IN CLERKS OFFICE

United States District Court - District Of Massachusetts
1 Courthouse Way
Boston, Massachusetts 02210

2019 DEC -2

U.S. DISTRICT COURT
DISTRICT OF MASS.

Laurence Brown,
pro se Plaintiff

                                                Civil Action

v.                                       NO. 17-cv-11688-IT

Christopher Delmonte,
Chief of Police
Bridgewater, MA


**PLAINTIFF'S RESPONSE TO DEFENDANT CHRISTOPHER DELMONTE'S OPPOSITION/REPLY TO "PLAINTIFF'S DISPOSITIVE MOTION" AND DEFENDANT'S EXHIBIT A**

It's clear that Massachusetts courts pay no attention to the DC v. Heller decision. It's also clear that Delmonte pays attention to jurisprudence only when it conforms to his prior beliefs. It's also true that there is a tremendous difference between what's alleged in a very biased police report and the actual facts (please read Hill v. Provencher, attached). Never forget that in the police reports you have the statement from only one side of the event, often from someone with a motive to lie. The rules of evidence are there for very good reasons. It is my hope that this honorable court will honor the decisions of prior courts in my cases.

I have repeatedly stated to this court that Delmonte's pleadings are factually incorrect. Furthermore, I have repeatedly requested that this court obtain its own copy of my 'criminal record' in order to properly decide this case on the facts as they actually appear in the record. There should be only 10 not guilty or dismissed and sealed cases of malicious prosecutions on my record.

For example, consider Defendant's Exhibit A:

> According to a FBI report on file at the Bridgewater Police Department by Special Agent Daniel Grant dated 04/17/90, in early 1966 Brown admittedly broke into mailboxes, stole, forged and cashed two stolen checks while he was in the military. Brown pled guilty and signed a confession indicating his criminal actions, violations of Military Articles which govern behavior. Brown was sentenced to serve one year at Leavenworth Military Prison in Kansas of which he spent one before being transferred to Amarillo, Texas to a re-training unit. Brown received a discharge other than honorable on March 6, 1967.

1

**THE ABOVE PARAGRAPH IS COMPLETELY UNTRUE.**

04/27/95 Mr. Brown was deemed to be an unsuitable person by the licensing authority in the Town of Franklin, MA for a License to Carry Firearms. Deputy Chief Semerjian states in his report the reason for denial was because of Mr. Brown's felony convictions while in the U.S. Military; was the defendant in an active permanent Domestic Abuse Petitions under C. 209-A; has been the defendant in five previous Domestic Abuse Petitions under C. 209-A; and his license to Carry Firearms #D983048 issued by the Walpole, MA Police Department was currently under revocation citing suitability issues. Deputy Chief Semerjian further states that after Mr. Brown received his denial letter from the Franklin Police Department he went to the Walpole Police Department and attempted to re-apply there by falsifying his residential address.

**THE ABOVE PARAGRAPH IS UNTRUE IN REGARD TO THE MILITARY FELONY CONVICTION AND THE FALSIFYING OF MY ADDRESS. Clearly, if there had been a felony on my record at any time I would never have been issued any of the many firearms licenses I have been issued, including several from Bridgewater. A false address seems easy to prove. However, it was not true and therefore not proven. Charges were dismissed.**

04/28/95 According to an incident report #1995000003631 prepared by the Walpole Police Department, Mr. Brown handed a juvenile Sarah Ditomasso a .44 Remington Magnum bullet and instructed her to give it to her father. The bullet was inscribed "Have a nice day". You then told her to tell her father that "I'll have another message I'll deliver myself".

**THE ABOVE PARAGRAPH IS COMPLETELY UNTRUE. What actually happened is the following:**

**With her mother's permission, I had taken her daughter, Sarah Ditomasso, to my club to watch me shoot several times. As all kids will do, Sarah started picking up spent cartridge cases from the ground. She told me that she wanted to start a collection. As a special surprise for her I asked a friend of mine who reloaded .44 magnum ammunition to make a special display .44 magnum cartridge for Sarah's collection according to the rules of the Sporting Arms and Ammunition Manufacturers' Institute (SAAMI) for making display cartridges.**

**The Sporting Arms and Ammunition Manufacturers' Institute (SAAMI) is an association of the nation's leading manufacturers of firearms, ammunition and components founded in 1926 at the request of the federal government and tasked with:**

- **Creating and publishing industry standards for safety, interchangeability, reliability and quality**
- **Coordinating technical data**
- **Promoting safe and responsible firearms use**

This display cartridge contained oil in place of gunpowder, is completely inert, can not be fired, and is not ammunition under Massachusetts law because it was designed for a display NOT for use in a firearm. The writing on the cartridge, "have a nice day", as well as the choice of cartridge, .44 magnum, came from the popular Dirty Harry movie series. Have a nice day was my kinder gentler version of "make my day" used in the movie. There never was any message to her father.

If required, Sarah Ditomasso is available to testify to the above facts in this court, as she did many years ago in Dedham District Court. Sharon DiTomasso, her mother, is also available.

The rest of Delmonte's letter consists of a misleading and often incorrect version of the fabricated complaints filed by my ex-girlfriend and my wife's ex-husband in their concerted attempt to destroy our relationship. The court heard these charges and the testimony from the alleged victims and pronounced me not guilty.

However, several portions of Delmonte's letter are interesting enough to merit comment.

> 05/13/95 According to an incident report#1995000004026 filed by the Walpole Police Department you were arrested by Walpole PD for violation of a 209A order. Abuse Prevention order docket# 95D0782-AB1 ordered Mr. Brown to stay away from 12 Summer Street Walpole. Walpole Police Officer's spoke with Mr. Brown as he exited the rear door of the house. Ms. Ditomasso and Mr. Brown both acknowledged that the 209A order was still in effect.

The interesting fact here is that this restraining order was requested by Mr. Ditomasso, who did not live at 12 Summer St., because he did not want me to visit his estranged wife, who did. The court dismissed this charge and the BBO censured his attorney for helping him get this 209A order.

> 06/29/95 According to incident report #1995000005492 prepared by the Walpole Police Department; Officers responded to a Domestic A&B at Mr. Brown's residence. The victim Janet Schloss was shaking and visibly upset, stating that Mr. Brown threw her around, and then showed Officers a fresh bruise and cut on her elbow. Mr. Brown was arrested for Domestic A&B.

> 06/29/95 According to incident report #1995000005501 filed by the Walpole Police Department pursuant to a stipulation in a restraining order Mr. Brown was allowed to pick up his personal belongings at 11 Stetson Circle Walpole in the company of an officer. Mr. Brown was arrested for A&B, reportedly throwing the plaintiff Ms. Shloss across the bed.

First of all, when the officers testified on the stand in my trial (on both charges) they stated that Ms. Shloss had no injuries, was neatly dressed, did not have messed up

3

hair, and went directly to her place of employment after
the second incident. Their truthful testimony greatly
helped me receive a not guilty from the court. Does anyone
really think I would have been found not guilty if there
really were any injuries?

However, it is interesting to consider that if the first
charge were true, that I did assault Ms. Shloss, how could
the second incident have occurred? How and why did this
shaking, visibly upset, and bruised woman sneak away from
the protection of the police officer in order to be alone
with me, her vicious attacker? Makes you think doesn't it.
Oh yes, I almost forgot, in the 2nd incident the officer
also verified that the bed was still neatly made!

10/02/97 According to an incident report# 1997000009878 filed by the Walpole Police Department;
Mr. Brown was arrested for Violation of a permanent Restraining Order # 9557R0196 which
ordered him to stay away from the victim's residence at 11 Stetson Circle.

We all know that there is no such thing as a permanent
restraining order. I probably was visiting with my daughter
for a few minutes but I can't be sure. The charge was
dismissed.

03/25/98 According to Deputy Chief Semerjuan of the Franklin Police Department, Lt. Scott Bushway
of the Walpole Police Department relayed to him that the address Mr. Brown submitted on his application for a
License to Carry was in fact fictitious and Mr. Brown did not and had not resided there.

If true this seems pretty easy to prove. However, it was
not true. Charges dismissed.

## FID Card# 00H034219 Revoked by the Canton Police Department

## FID Card# 00H702173 Revoked by the Canton Police Department

The above are related to FID cards that I was unable to
turn in to the Canton police, pursuant to the requirements
of the various 209A orders, because I did not have control
of them. They were being held by Ms. Shloss. Therefore,
they had to be cancelled.

08/24/06 You were issued three no trespass orders for your immediate neighbors' property's (#10, 12 & 22
Virginia Drive).

With the exception of #22, who was a crazy lady who was
forced to move by the rest of my condo neighbors years ago,
I have no idea what me Delmonte is talking about here.
Certainly, if the court wants to interview ANY of my

4

**neighbors PLEASE do so. I have suggested just that many times to Delmonte and he always refuses.**

05/06/08 Neighbor Diane Freeborn and Lisa Troiano both call to complain of you videotaping their young children playing in the yard (call# 08-3894).
**Feel free to interview Lisa. She is a good neighbor and friend.**

05/29/10 According to incident #10-4585 with the Bridgewater Police Department Diane Freeborn of 22 Virginia drive filed for and received a Harassment Prevention Order against Brown. 06/01/10 Closed.
**Please note the dates. I believe that the closed date should actually be 06/03/10. Also notice the date on the actual result of this hearing, my restraining order, attached. Crazy lady.**

04/06/12 You were summonsed into Brockton District Court for a show cause hearing for an assault with a dangerous weapon. A 14 year-old juvenile reported that you threw a rock at her; complaint was dismissed at the clerks hearing.

04/24/12 You were summonsed into Brockton District Court for a show cause hearing for malicious destruction of property under $250. Neighbor Diane Freeborn reported that you destroyed her landscaping; complaint was dismissed at the clerks hearing.

11/08/12 Restraining order   Docket #1215RO398  Closed 12/09/14   Tina Freeborn OBO Jessica Tay
**These are all the crazy lady. She was doing her best to force me to move. She liked my property and wanted access to it. Instead she was forced to move years ago. (Please see the various restraining orders that I was able to obtain against her).**

01/30/13 Appeared in Brockton District Court (Docket #'s 1215CR007904A, 1215CR007904B & 1215CR007905B) for three counts of Violation of Harassment Prevention order. Dismissed on 04/29/13.

01/29/14 Appeared in Brockton District Court (DKT# 1315CR006966A) for Violation of Harassment Prevention order. Dismissed at Jury Trial on 04/08/16.
**This information is just false. You'll find no records of those proceedings.**

08/02/17, as a follow-up to your email inquiry regarding your most recent LTC application, you were given the opportunity to come to the station to provide further information to be considered. At that meeting, you brought a DVD of a District Court hearing where you were granted a 209A restraining order essentially disputing the most recent criminal complaints and civil orders filed against you by Ms. Diane Freeborn. As you know, this has been a long-standing dispute between both of you. However, at this meeting you separately stated despite all previous criminal charges or incidents that have taken place through the years involving various victims and complainants, no one has ever been injured and you have never been arrested. Based on the previous records listed above, more than one victim has complained of and officers have viewed observable injuries and you have also been arrested more than once for domestic violence related incidents. These inaccuracies demonstrate a lack of responsibility and pattern of denial in the face of credible information.
**I never told Delmonte that I had never been arrested. Rediculus. It is true that there have never been any**

evidence of injuries presented during any of my trials. Does anyone really think I would have been found not guilty or had the charges dismissed if there really were any injuries?

I don't believe that Delmonte really wants to talk about inaccuracies or credible information. If Delmonte believes that reliable credible information can be obtained by listening to only one side in a dispute he is sadly mistaken.

Delmonte, and his contacts in the other police departments, are exhibiting the psychological conditions of confirmation bias, attitude polarization, belief perseverance, illusory correlation, and disconfirmation bias. Once they chose to believe the false narrative about me and the fabricated criminal complaints they became completely resistant to the truth. In order to protect their communities from a person as dangerous as I appeared to be these superior officers had no qualms about assisting Ms Shloss and Mr Ditomasso in 'any way they could' to get me off of the street.

Luckily for me, those psychological conditions appear to be restricted to the superior officers in those police departments. All the policeman who testified at my trials always told the truth about what they saw, otherwise I would probably have been convicted in at least one case.

Attached are several court documents and affidavits that hopefully will help balance Delmonte's highly inflammatory and misleading denial letter.

Respectfully Submitted,

_L Brown_

Laurence Brown, Plaintiff, pro se        11/26/19
20 Virginia Dr.
Bridgewater, MA 02324
774 444 0547
oursite1@hotmail.com

## CERTIFICATE OF SERVICE

I hereby certify that I emailed this document to Thomas Donohue at tdonohue@bhpklaw.com on this date.

_L Brown_
Laurence Brown, plaintiff