UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LAURENCE BROWN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 17-cv-11688-IT |
| | * | |
| CHRISTOPHER DELMONTE, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

March 19, 2021

TALWANI, D.J.

Plaintiff Laurence Brown, proceeding *pro se*, challenges the denial of his application to renew his license to carry a firearm ("LTC"). In his Amended Complaint [#30], Brown alleges that Bridgewater Chief of Police Christopher Delmonte's denial of his application violates his constitutional rights under the Second and Fourteenth Amendments. After answering the Amended Complaint [#30], Delmonte filed a Motion for Judgment on the Pleadings [#48]. For the following reasons, the motion is GRANTED.

I.      **Background**

A.      *Statutory Scheme*

In Massachusetts, it is a crime to carry a firearm in public without a valid license. Mass. Gen. Laws ch. 269, § 10(a). An LTC may be requested by application made to the appropriate "licensing authority," defined as the police chief or board or officer having control over the police in the city or town where the applicant resides or is employed. Mass. Gen. Laws ch. 140, §§ 121, 131(d).

Massachusetts specifies the circumstances under which a licensing authority may grant, renew, or revoke an LTC. Id. § 131. Under the statute, a licensing authority "may" issue an LTC

if "it appears" that the applicant is (1) not a "prohibited person" and (2) has a "proper purpose" for carrying a firearm. Id. § 131(d).[1] As to the first factor, certain applicants, such as felons and minors, are categorically excluded from possessing a firearm. Id.; see also Ruggiero v. Police Com'r of Boston, 18 Mass. App. Ct. 256, 259, 464 N.E.2d 104 (1984) (discussing an earlier, similarly worded version of the statute). If an applicant does not fall into an excluded category, the licensing authority may still deny the application under the first factor "if, in a reasonable exercise of discretion, the licensing authority determines that the applicant or licensee is unsuitable to be issued or to continue to hold a license to carry." Mass. Gen. Laws ch. 140, § 131(d). This suitability determination must be based on "reliable and credible information" or "existing factors" that suggest the applicant would create a risk to public safety. Id.; see also Chief of Police of City of Worcester v. Holden, 470 Mass. 845, 854, 26 N.E.3d 715 (2015). As to the second factor, the statute does not enumerate all the "proper purposes" for carrying a firearm, but it does specify that the licensing authority "may" issue an LTC if the applicant "has good reason to fear injury to the applicant or the applicant's property" or "for any other reason, including the carrying of firearms for use in sport or target practice only, subject to the restrictions expressed or authorized under this section." Mass. Gen. Laws ch. 140, § 131(d).

When a licensing authority denies an application or revokes or suspends an LTC based on a finding of unsuitability, it must notify the applicant in writing of the specific reasons for the

---

[1] Massachusetts law previously authorized licensing authorities to issue "Class A" LTCs, which permitted an individual to carry a concealed firearm in public and to possess "large capacity" firearms, and "Class B" LTCs, which permitted only open carry of firearms not classified as being large capacity. See Mass. Gen. Laws ch. 140, § 131(b); see also id. § 121 (defining "large capacity"). In 2014, the legislature enacted a statute phasing out statutory references to Class A and B LTCs by 2021 and directing licensing authorities to immediately stop issuing Class B LTCs and to issue all new and renewed LTCs as Class A LTCs. 2014 Mass. Acts ch. 284, §§ 46-57, 101.

determination. Id. The applicant or licensee may appeal the denial or revocation within ninety

days to the state district court with jurisdiction over the locality where the application was filed.

Id. § 131(f). A state district court judge may order issuance of an LTC upon a finding "that there

was no reasonable ground for denying, suspending, revoking or restricting the license and that

the petitioner is not prohibited by law from possessing a license." Id. If the judge affirms the

licensing authority's decision, the applicant can obtain superior court review through a petition

for certiorari, Mass. Gen. Laws ch. 249, § 4, and the superior court's determination may be

appealed as of right, Mass. R. App. P. 4.

      As an alternative to an LTC, a licensing authority can issue a firearms identification card

("FID"), which "allows the holder to own, transfer, or possess a [non-large-capacity] firearm in

his residence or place of business." Commonwealth v. Gouse, 461 Mass. 787, 799 n.14, 965

N.E.2d 774 (2012). However, "[a]lthough an FID card allows its holder to own or possess a

firearm within the holder's residence or place of business, it does not allow the holder to carry

the firearm to or in any other place." Chardin v. Police Com'r of Bos., 465 Mass. 314, 316 n.5

989 N.E.2d 392 (2013), cert. denied sub nom., Chardin v. Davis, 571 U.S. 990 (2013)); see also

Mass. Gen. Laws ch. 140, § 129C.

      B.    *Procedural Background*

        1.    Challenges Following 2011 Denial of Brown's LTC Application

      In 2011, Delmonte denied Brown's application to renew his LTC, and Brown

commenced a series of challenges under state and federal law. He argued in state district court

that he was a suitable candidate for an LTC, that Delmonte's decision was arbitrary, capricious,

and an abuse of discretion and improperly considered sealed records, and that denial of his

application was a Second Amendment violation. See Brown v. Chief of Police of Bridgewater,

89 Mass. App. Ct. 1109, 46 N.E.3d 115, 2016 WL 768314 (2016) (unpublished summary

disposition). After a hearing, the state district court judge affirmed Delmonte's denial of Brown's application. Id. Brown filed a petition for certiorari review in state superior court, and a superior court judge affirmed the judgment. Id. Brown then appealed to the Massachusetts Appeals Court, which likewise upheld the denial of his application and rejected the argument that the denial violated his Second Amendment rights. Id.

In May 2016, after the state court proceedings had run their course, Brown filed an action in this court, raising the same arguments. See Complaint, Brown v. Healey, No. 16-cv-10983 (D. Mass. May 27, 2016) ECF No. 1. The court dismissed the action on the ground of res judicata. See Memorandum and Order, Brown v. Healey, No. 16-cv-10983 (D. Mass. July 7, 2017) ECF No. 50.

        2.        Challenges Following 2017 Denial of Brown's LTC Application

In 2017, Delmonte denied Brown's new application for an LTC, and Brown initiated this action against Massachusetts Attorney General Maura Healey, claiming that the firearms licensing statute violates the Second Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment and that the "concept of unsuitability is unconstitutionally vague." Compl. ¶¶ 20, 105, 126 [#1]. The court granted Attorney General Healey's Motion to Dismiss [#16], finding that, to the extent Brown was bringing a facial challenge to Massachusetts' firearms licensing laws, the complaint was barred under the doctrines of claim and issue preclusion for substantially the same reasons set forth in the court's decision dismissing Brown's prior action, and that to the extent Brown sought to make an as-applied challenge to the 2017 denial of his application for renewal of his LTC, Brown had named the wrong defendants. Elec. Order [#25]. The court subsequently granted Brown's Motion to Amend the Complaint [#27], see Elec. Order [#29], and Brown thereafter filed an Amended Complaint

[#30] against Delmonte, asserting as-applied claims under the Second and Fourteenth Amendments. Delmonte's <u>Answer</u> [#34] and the pending <u>Motion for Judgment on the Pleadings</u> [#48] followed.

## II.    Standard of Review

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Where "a motion for judgment on the pleadings 'is employed as a vehicle to test the plausibility of a complaint, it must be evaluated as if it were a motion to dismiss.'" <u>Shay v. Walters</u>, 702 F.3d 76, 82 (1st Cir. 2012). Judgment on the pleadings is appropriate when the moving party clearly establishes that no material facts are in dispute and that it is entitled to judgment as a matter of law. See <u>Aponte-Torres v. Univ. of Puerto Rico</u>, 445 F.3d 50, 54 (1st Cir. 2006).

In evaluating a motion to dismiss for failure to state claim, this court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." <u>Nisselson v. Lernout</u>, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." <u>Twombly</u>, 550 U.S. at 555 (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009). In general, a complaint filed *pro se* is "liberally construed" and held to "less stringent standards than formal pleadings drafted by lawyers." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) (quoting <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972)). That does not mean that *pro se* plaintiffs need not plead facts sufficient to state a claim,

but it does afford them some leniency when facing a motion to dismiss. See Ferranti v. Moran, 618 F.2d 888, 890 (1st Cir. 1980) (citation omitted).

In ruling on a motion to dismiss, "a judge can mull over 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" Lydon v. Local 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014) (quoting Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008)) (alteration in original).

### III.    Jurisdiction

Federal courts are courts of limited jurisdiction, so federal jurisdiction is never presumed. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). A challenge to the court's subject matter jurisdiction must be addressed before addressing the merits of a case. See Acosta-Ramirez v. Banco Popular de Puerto Rico, 712 F.3d 14, 18 (1st Cir. 2013) ("Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case"). If the court lacks jurisdiction over a matter, it may not, by definition, enter judgment, but may dismiss the matter for lack of subject matter jurisdiction.

Delmonte argues that judgment should enter in his favor because the federal district court does not have jurisdiction over firearms licensing appeals. Def.'s Mem. 3 [#49]. As Delmonte correctly notes, Mass. Gen. Laws ch. 140, § 131(f) permits an applicant to appeal denial of an application for an LTC only in the state courts. Indeed, that is the route Brown followed when challenging the 2011 denial. Brown's claim here, however, is not that Delmonte acted beyond the bounds of the discretion granted him under state law.

Instead, Brown asserts that this court has federal question jurisdiction under 28 U.S.C. § 1331, that Delmonte's decision abridges his Second and Fourteenth Amendment rights, and that the relief he seeks is "restoration of [his] full constitutional rights." Am. Compl. 3-4 [#30]; see also Pls.' Resp. to Def.'s Answer 4 [#38] (referencing 42 U.S.C. § 1983). To the extent that

6

Brown mounts a challenge of constitutional dimension, this court has jurisdiction. See Rosenfeld v. Egy, 346 F.3d 11, 17-18 n.4 (1st Cir. 2003) (court considered the substance of plaintiff's constitutional § 1983 claims arising from, *inter alia*, denial of his license-to-carry-renewal application but noted that "[i]f [plaintiff] wants to argue that he is, in fact, a "suitable person," his proper recourse is with the state courts"). Although inartfully pleaded, the court considers his claims of constitutional violations as brought under 42 U.S.C. § 1983. See, e.g., Lovering v. Massachusetts, 2016 WL 2977261, at *2 n.2 (D. Mass. May 20, 2016) (*pro se* plaintiff contested firearms license denial for unsuitability on constitutional grounds without citing to § 1983 but court "interpret[ed] his complaint as alleging claims under § 1983"); O'Connell v. Gross, 2020 WL 1821832 at *2 (D. Mass. Apr. 10, 2020) (same).

## IV.   Discussion

Section 1983 creates a civil cause of action against an individual acting under color of state law who violates a plaintiff's federally protected rights. 42 U.S.C. § 1983. "A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997). In this case, Delmonte was indisputably acting under color of state law, so the question is whether Delmonte deprived Brown of a legally cognizable right.

### A.   *Second Amendment*

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In District of Columbia v. Heller, the Supreme Court held, for the first time, that the Amendment protects an "individual right to possess and carry weapons in case of confrontation." 554 U.S. 570, 592 (2008). The Court has since held that the Amendment's

protections apply to the regulation of firearms by states and localities via the Fourteenth Amendment. See McDonald v. City of Chicago, 561 U.S. 742, 791 (2010).

At core, the Second Amendment guarantees "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." Heller, 554 U.S. at 635; see also Hightower v. City of Boston, 693 F.3d 61, 72 (1st Cir. 2012) (explaining that the "core interest emphasized in Heller" is the "the possession of operative firearms for use in defense of the home"). The Second Amendment right articulated in Heller and McDonald, however, "is not unlimited." Heller, 554 U.S. at 626. It is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. Rather, the Court cautioned, nothing in its opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id. at 626-27.

Since Heller was decided, "courts have adopted a two-step approach for analyzing claims that a statute, ordinance, or regulation infringes the Second Amendment right." Gould v. Morgan, 907 F.3d 659, 668 (1st Cir. 2018). "Under this approach, the court first asks whether the challenged law burdens conduct that falls within the scope of the Second Amendment's guarantee," which entails determining "whether the regulated conduct 'was understood to be within the scope of the right at the time of ratification.'" Id. at 669 (quoting United States v. Chester, 628 F.3d 673, 680 (4th Cir. 2010)). "If the challenged law imposes no such burden, it is valid. If, however, it burdens conduct falling within the scope of the Second Amendment, the court then must determine what level of scrutiny is appropriate and must proceed to decide whether the challenged law survives that level of scrutiny." Id.

1.      Scope of Second Amendment Right

The relief sought by Brown is the ability to exercise his "full Second Amendment rights." Am. Compl. 3 [#30]. Although his FID permits him to possess a firearm in his home, he contends that only an LTC "allows an individual to access all of his Second Amendment rights," which, in his view, include the right to carry a firearm in public. Id. at ¶ 5. The First Circuit has acknowledged that "the right to carry a firearm for self-defense guaranteed by the Second Amendment is not limited to the home" but has not defined the contours of the right to public carry. See Gould, 907 F.3d at 670. It has further cautioned that courts should enter this area of inquiry "only upon necessity and only then by small degree." Hightower, 693 F.3d at 74. Accordingly, the court assumes for purposes of this motion that the state licensing scheme may burden conduct falling within the scope of the Second Amendment and therefore turns to the question of whether the statute survives the applicable level of constitutional scrutiny.

2.      Level of Scrutiny

"[T]he appropriate level of scrutiny must turn on how closely a particular law or policy approaches the core of the Second Amendment right and how heavily it burdens that right. A law or policy that burdens conduct falling within the core of the Second Amendment requires a correspondingly strict level of scrutiny, whereas a law or policy that burdens conduct falling outside the core of the Second Amendment logically requires a less demanding level of scrutiny." Gould, 907 F.3d at 670-71. Accordingly, a law burdening the use of a firearm in defense of hearth and home is subject to strict scrutiny. See id. at 671. By contrast, "public carriage of firearms for self-defense falls outside the perimeter of this core right" and is therefore subject to intermediate scrutiny. Id. at 672. To survive a constitutional challenge, a law that burdens the right to public carry must therefore "substantially relate[] to one or more important

9

governmental interests." Id. at 673. A statute will be deemed substantially related to the governmental objective where there is a reasonable fit between the legislature's ends and the means chosen to accomplish those ends. See Bd. of Trustees of State Univ. of New York v. Fox, 492 U.S. 469, 475 (1989).

       3.      Application

      Brown alleges that on June 9, 2017, he applied for renewal of his LTC.[2] Am. Compl. ¶ 6 [#30]. Delmonte denied the application in a letter dated August 16, 2017, deeming Brown "unsuitable" to continue to hold an LTC. Id. Delmonte's decision was based on police reports, and Delmonte did not consider the testimony or evidence presented in the cases (which either were dismissed, resulted in not guilty verdicts, or were sealed) or interview the alleged victims. Id. at ¶ 7. In making his decision, Delmonte also did not contact any of the character references listed by Brown, which included four of his immediate neighbors who have known him for fifteen years. Id. at ¶ 9. Brown claims that by proceeding in this manner, Delmonte violated his Second Amendment rights. Id. at ¶ 7.

      The purpose of the licensing provisions of Mass. Gen. Laws ch. 140, § 131, is "to protect the health, safety, and welfare of [Massachusetts] citizens." Chardin, 465 Mass. at 327. Without question, Massachusetts has a substantial interest in promoting public safety and preventing crime. See, e.g., Schenck v. Pro-Choice Network of Western New York, 519 U.S. 357, 376 (1997) ("the governmental interest in public safety is clearly a valid interest"); United States v. Salerno, 481 U.S. 739, 750 (1987) ("the [g]overnment's general interest in preventing crime" is

---

[2] The application was for a renewal because, at some point, Brown had been issued an LTC by Delmonte's predecessor. Am. Compl. ¶ 8 [#30].

"compelling"). Indeed, "few interests are more central to a state government than protecting the safety and well-being of its citizens." Gould, 907 F.3d at 673.

As described above, the Massachusetts firearm licensing scheme provides that a licensing authority "may" issue an LTC if the applicant is (1) not a "prohibited person" and (2) has a "proper purpose" for carrying a firearm. Mass. Gen. Laws ch. 140, § 131(d). The statute explicitly grants the licensing authority broad discretion to deny an application if, based on "reliable and credible information," it appears that the applicant would create a risk to public safety. Id. The court therefore considers whether Delmonte's implementation of the licensing statute is substantially related to the government interests of ensuring the safety and security of Massachusetts citizens.

Although police reports in cases that were dismissed, resulted in not guilty verdicts, or were sealed may not provide as reliable evidence of unsuitability to possess an LTC as records of conviction, "a series of arrests might legitimately suggest a pattern of unlawful behavior even in the absence of any convictions." United States v. Zapete–Garcia, 447 F.3d 57, 61 (1st Cir. 2006). To the extent that Delmonte deemed the reports "reliable and credible," his consideration of them is consistent with the significant legislative goals of the licensing statute. And if Delmonte found that the reports raised a concern that Brown lacked the temperament which should be present in someone permitted to carry a firearm in public, he was under no constitutional obligation to conduct further investigation.[3]

---

[3] As noted above, to the extent that Brown's argument is that Delmonte relied on information that was *not* "reliable and credible," his recourse is with the state district court, which may review the decision to determine whether it was arbitrary and capricious. Mass. Gen. Laws ch. 140, § 131(f); see also Firearms Rec. Bureau v. Simkin, 466 Mass. 168, 179, 993 N.E.2d 672 (2013).

Because the court finds that the means employed by Delmonte were substantially related to the government's interests in public safety and crime prevention, his decision not to issue Brown an LTC survives intermediate scrutiny. Mass. Gen. Laws ch. 140, § 131 was therefore constitutionally applied to Brown, and judgment may enter in favor of Delmonte.

    B.    *Equal Protection*

"An equal protection claim requires 'proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (quoting Rubinovitz v. Rogato, 60 F.3d 906, 909–10 (1st Cir. 1995)). Brown's Amended Complaint [#30] has not alleged that Delmonte treated him differently than others similarly situated based on any classification, protected or otherwise. Judgment in favor of Delmonte is therefore appropriate.

**V.    Conclusion**

For the foregoing reasons, Delmonte's Motion for Judgment on the Pleadings [#48] is GRANTED.

IT IS SO ORDERED.

March 19, 2021                          /s/ Indira Talwani
                                                 United States District Judge